IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **WESLEY J. PURKEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 03-3157-CM** |
| ) | |
| **CORRECTIONS CORPORATION OF** ) | |
| **AMERICA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Wesley J. Purkey, a prison inmate, filed this civil rights lawsuit against Corrections Corporation of America ("CCA") and several of its officers and officials. CCA has a contract with the United States Marshal Service to detain and house federal prisoners. Plaintiff, who is a federal prisoner, was detained at CCA during the time period relevant to this case. Plaintiff seeks relief for violations of his federally-protected rights. Specifically, he claims that defendants destroyed his legal papers (Count I); prohibited him from helping other inmates file grievances (Count II); used unsafe procedures that caused plaintiff to fall in the shower (Count IV); retaliated against him for filing grievances (Count V); and used excessive force (Count VI).

The case is before the court on Defendants' Motion to Dismiss (Doc. 54). On August 21, 2006, this court denied defendant's motion in part. The court also ordered plaintiff to offer full proof that he exhausted his administrative remedies with respect to Count VI (the excessive force claim). In the alternative, the court advised plaintiff that he could voluntarily dismiss the claim so the court could proceed with plaintiff's remaining exhausted claims.

Plaintiff responded to the court's order on August 25, 2006. In his pleading, plaintiff asks the court to alternatively (1) find that plaintiff's July 10, 2003 letter, construed liberally, represented plaintiff's appeal of his excessive force grievance determination; (2) find that because CCA remedies were not available to plaintiff after he transferred from the facility, plaintiff was not required to fully exhaust such remedies; or (3) dismiss Count VI, rather than requiring plaintiff to voluntarily dismiss the claim, in order to preserve plaintiff's right to appeal the exhaustion issue. For the following reasons, the court rejects plaintiff's arguments, and grants defendant's motion to dismiss.

Before proceeding to the merits of plaintiff's arguments, a brief timeline of plaintiff's allegations regarding the events relevant to Count VI may be helpful:

– May 19, 2003 - CCA officers confiscated plaintiff's legal papers

– May 19, 2003 - CCA officer filed a disciplinary report against plaintiff for attempting to take personal mail to court

– May 26, 2003 - Plaintiff grieved (1) the confiscation of legal papers and (2) the disciplinary report

– Date unknown (presumably May 27, 2003) - CCA officer returned plaintiff's May 26 grievances without logging them, and stated that the grievances were non-grievable

– May 28, 2003 - Plaintiff appealed the determination of his two grievances

– May 28, 2003 - CCA held a disciplinary hearing on the allegations that plaintiff tried to take personal mail to court; plaintiff lost

– May 28, 2003 - Plaintiff indicated that he wanted to appeal disciplinary hearing decision

– May 28, 2003 - Following the disciplinary hearing, CCA officers allegedly used excessive force when returning plaintiff to his cell block

– June 3, 2003 - Plaintiff grieved the use of excessive force

– June 4, 2003 - Plaintiff left CCA and entered USP-Leavenworth

-2-

- June 12, 2003 - CCA Grievance Officer denied plaintiff's excessive force grievance
- June 13, 2003 - CCA sent the excessive force grievance denial to plaintiff at USP-Leavenworth
- July 10, 2003 - Plaintiff wrote a letter to CCA providing notice of his address change

As the court noted in its previous opinion, CCA has an administrative remedies policy under which grievants must file a grievance and appeal to exhaust their administrative remedies. For plaintiff to have a viable claim, therefore, he must show either (1) that he appealed his excessive force grievance, or (2) that because he transferred out of CCA's facility before completing the grievance process, CCA's administrative remedies were no longer available to him. *See generally* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust "available" administrative remedies before filing an action with respect to prison conditions).

### I. Plaintiff's July 10 Letter

The court first finds that plaintiff's July 10, 2003 letter – even construed liberally – did not constitute an appeal of plaintiff's excessive force grievance determination. The first sentence of the letter indicated that its purpose was to provide CCA with plaintiff's new address pertaining to "(2) Grievance Appeal Responses, as well as a Disciplinary Appeal Response which were pending upon my transfer from CCA, June 4th, 2003." In the next sentence, plaintiff clarified that he was referencing "the initial grievance [which] addressed the unlawful 'confiscation of legal materials,' [and] the second grievance [which] addressed the alleged 'improper and retaliatory disciplinary action' pertaining to this same issue." Plaintiff then stated that "[t]he disciplinary appeal was filed the same date with the two grievances appeals which sought relief from the alleged unlawful disciplinary conviction [pertaining] to the confiscation of the grieved legal materials."

On the second page of his letter, plaintiff mentioned his excessive force grievance. But

-3-

rather than indicating that the letter also related to the excessive force claim and that he was seeking action on the excessive force claim, plaintiff distinguished the excessive force claim from the other two grievances and the disciplinary conviction. He then again specified that the Notification of Address Change pertained to the two grievances and disciplinary appeal in his "Proof of Mailing."

To read the letter as an appeal of plaintiff's excessive force grievance is unreasonable. Notably, plaintiff mentions in the first sentence that the appeal responses were "pending upon his transfer." When plaintiff transferred out of CCA, he had filed his excessive force grievance, but CCA had not responded, and plaintiff had not appealed. It would therefore be unreasonable to construe plaintiff's reference to his "grievance appeal responses" as applicable to his excessive force claim, which had not been appealed. In addition, grievants are required to submit appeals to the Warden within five days of receiving the decision. Plaintiff's July 10 letter would have been an untimely appeal.

For these reasons, the court finds that even construed liberally, the July 10 letter does not constitute an appeal of plaintiff's excessive force grievance.[1]

## II.   Availability of Administrative Remedies

The court next finds that CCA remedies were still available to plaintiff after he transferred from the facility. Plaintiff claims that he was no longer eligible to participate in CCA's grievance program after he left the facility. But CCA's policy specifically contemplates that grievants will continue the process after they leave the facility; Policy 14-5.5 I.3. provides:

> If a grievance is submitted for review and the grievant is released from custody, efforts to resolve the grievance will normally continue. It is the grievant's responsibility to notify the Facility Grievance Officer of the pending release and to provide a forwarding address and any other pertinent information.

---

[1] The court finds the issue of whether the Warden incorrectly stated that plaintiff never filed an excessive force grievance immaterial to the court's decision here.

-4-

Significantly, plaintiff wrote his July 10, 2003 letter pursuant to this policy, and referenced the policy in the letter. He specified that he was giving CCA the "Notification of Address Change" under Policy 14-5. This indicates to the court that plaintiff was aware that he could continue the grievance process after leaving CCA. The letter, in fact, appears to be an attempt to continue the process with respect to plaintiff's other grievances and disciplinary conviction. The court will not speculate why plaintiff chose not to pursue his excessive force grievance, but plaintiff appears to have made the conscious choice not to pursue it.

This case is similar to *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31 (1st Cir. 2002). In *Medina-Claudio*, the First Circuit held that the grievance mechanism for the Puerto Rico Administration of Corrections ("AOC") was still available to the plaintiff while he was in the custody of the federal prison system. 292 F.3d at 35. The First Circuit pointed out that nothing in the AOC's regulations prevented the plaintiff from filing an administrative complaint when he was at another facility. *Id.* The court further observed that, at best, the plaintiff's argument that he was not required to exhaust his remedies amounted to a futility argument. *Id.* The Tenth Circuit does not recognize a futility exception to the Prison Litigation Reform Act's exhaustion requirement. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

The court does not find plaintiff's attempt to distinguish *Medina-Claudio* persuasive. Plaintiff emphasizes that the *Medina-Claudio* plaintiff was only away from AOC facilities "temporarily," and therefore may have preserved his right to pursue grievances. The *Medina-Claudio* plaintiff, however, was in federal custody and away from AOC facilities for over a year.

On the other hand, the court finds *Bradley v. Washington*, – F. Supp. 2d –, No. 05-1304(ESH), 2006 WL 2147606 (D.D.C. Aug. 2, 2006), distinguishable. The *Bradley* court focused on the fact that the prison's inmate grievance procedures contained no provisions for submitting

-5-

grievances after being released. *See* 2006 WL 2147606, at *4. Again, the provisions in the instant case contemplate that grievants will continue the process even if they are released. And the fact that CCA sent plaintiff the decision on his excessive force grievance after he left the facility reinforces CCA's written policy.

The court is also not persuaded by plaintiff's argument that the grievance procedures only apply to CCA inmates because Policy 14-5 defines a "grievant" as an "inmate/resident," and defines an "inmate/resident" as one who is "housed in a CCA facility." Plaintiff's argument might carry more weight if the policy did not provide for the continuation of grievances after release.

For the above-stated reasons, the court finds that plaintiff had administrative remedies "available" to him even after he left CCA. Because plaintiff did not complete the grievance process under CCA policy, he did not exhaust his administrative remedies.

**III.    Dismissal of only Count VI**

Finally, the court declines to dismiss only Count VI. A finding that plaintiff failed to exhaust his remedies with respect to Count VI requires that the court dismiss plaintiff's entire complaint. *See Steele v. Fed. Bureau of Prisons*, 100 Fed. Appx. 773, 775 (10th Cir. 2004) (holding that "unless all available remedies are exhausted for all of the claims in a *Bivens* action, the action must be dismissed") (citing *Ross v. County of Bernalillo*, 365 F.3d 1181, 1190 (10th Cir. 2004)). Although the court has given plaintiff the opportunity to voluntarily dismiss Count VI, plaintiff has indicated that he does not wish to do so. *See Dawson v. Taylor*, 128 Fed. Appx. 677, 679 (10th Cir. 2005) ("[T]he district court may give [the plaintiff] an opportunity to voluntarily dismiss his unexhausted claims and proceed with his exhausted claims." (citation omitted)). The court therefore dismisses plaintiff's entire complaint without prejudice because it contains both exhausted and unexhausted claims. *See Ross*, 365 F.3d at 1190 ("[T]he presence of unexhausted claims . . . require[s] the

-7-

district court to dismiss [an] action in its entirety without prejudice.").

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 54) is granted.

Dated this 6th day of September 2006, at Kansas City, Kansas.

                                       **s/ Carlos Murguia**
                                       **CARLOS MURGUIA**
                                       **United States District Judge**